ANNE M. BEVINGTON (SBN 111320)
CAROL A. TREASURE (SBN 225751)
SALTZMAN & JOHNSON LAW CORPORATION
44 Montgomery Street, Suite 2110
San Francisco, CA 94104
(415) 882-7900 - Telephone
(415) 882-9287 – Facsimile
abevington@sjlawcorp.com
ctreasure@sjlawcorp.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, JAMES H. BENO, Trustee, STEPHEN J. MACK, Trustee, DON CROSATTO, Trustee, JAMES SCHWANTZ, Trustee, DOUG CORNFORD, Trustee, RYAN THIBODEAU, Trustee, and RICH MORALES, Trustee,<br><br>Plaintiffs,<br>v.<br><br>SOUTH CITY MOTORS, INC., a Delaware corporation, CAPITOL EXPRESSWAY FORD, INC., a Delaware corporation, SUNNYVALE FORD, INC., aka PENINSULA FORD OF SUNNYVALE, and FORD MOTOR COMPANY, a Delaware corporation,<br><br>Defendants. | Case No.:  4:17-cv-4491<br><br>**COMPLAINT TO CONFIRM AND ENFORCE ARBITRATOR'S AWARD** |

Plaintiffs Automotive Industries Pension Trust Fund ("the Plan") and its Trustees, for their Complaint to Confirm and Enforce Arbitrator's Award against Defendants South City Motors, Inc., Capital Expressway Ford Inc., Sunnyvale Ford, Inc., aka Peninsula Ford of Sunnyvale and Ford Motor Company, (collectively, "the Ford Group") pursuant to 29 U.S.C. § 1401(b)(2), allege as follows:

**INTRODUCTION**

1. This is an action to enforce the July 8, 2017 Arbitration Award of Arbitrator Thomas F. Levak under Section 4221(b)(2) of the Employee Retirement Income Security Act of

1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. § 1401(b)(2). Defendants South City Motors, Capitol Expressway Ford, and Sunnyvale Ford, Inc. were contributing employers to the Plan along with other Ford dealerships, all of whom were under the common ownership of Defendant Ford Motor Company. When the last of the contributing members of the Ford Group withdrew from the Plan, the Plan assessed withdrawal liability under the MPPAA against the Ford Group.

2. In December 2012, the Ford Group initiated arbitration to contest the assessed withdrawal liability. The Arbitration was resolved in favor of Respondent, the Plaintiffs in this current action, and the Ford Group was ordered to make future installment payments of its withdrawal liability on the schedule set by the Plan, and to pay the Plan's attorneys fees and costs. The Arbitration Award ("Award") states in pertinent part: "[a]ttorneys fees in the amount of $109,262.75 and costs in the amount of $9,452.73 are immediately due and payable by Claimants to Respondent." Plaintiffs have made multiple requests that the Ford Group comply with the payment requirements pursuant to the Award. Defendants have refused to pay the attorneys fees and costs. Accordingly, Plaintiffs hereby seek enforcement of the Arbitration Award and a Judgment against the Ford Group confirming and enforcing the Award.

**PARTIES**

3. The Plan is an employee benefit plan as defined in ERISA § 3(3) (29 U.S.C. §1002(3)), an "employee benefit pension plan" as defined in ERISA § 3(2) (29 § U.S.C. 1002(2)); and a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and 1301(a)(3)). The Trust is jointly administered and is maintained pursuant to the Labor Management Relations Act Section 302(c) (29 U.S.C. § 186(c)).

4. Plaintiffs James H. Beno, Trustee, Stephen J. Mack, Trustee, Don Crosatto, Trustee, James Schwantz, Trustee, Doug Cornford, Trustee, Ryan Thibodeau, Trustee, and Rich Morales, Trustee, are each members of the Plan's Board of Trustees (collectively, the "Trustees"). Plaintiff Trustees are "fiduciaries" with respect to the Trust as defined in ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)), and are collectively the Board of Trustees' "plan sponsor" within the meaning of ERISA §§ 3(16)(B)(iii) and 4001(a)(10)(A) (29 U.S.C. §§ 1002(16)(B)(iii) and

1301(a)(10)(A)).

5. The Plan and the Trustees are herein jointly referred to as "Plaintiffs."

6. At all relevant times, Defendant South City Motors, Inc., ("South City Motors") a Delaware corporation, was a Ford dealership engaged in the retail sales and service of new and used cars, trucks and SUVs, with its principal place of business in South San Francisco, California; Defendant Capitol Expressway Ford, Inc. ("Capital Expressway"), a Delaware corporation, was a Ford dealership engaged in the retail sales and service of new and used cars, trucks and SUVs, with its principal place of business in San Jose, California; Defendant Sunnyvale Ford, Inc., aka Peninsula Ford of Sunnyvale, a California corporation, was a Ford dealership engaged in the retail sales and service of new and used cars, trucks and SUVs, with its principal place of business in Sunnyvale, California; and Defendant Ford Motor Company, a Delaware corporation, was a motor vehicle manufacturer with its principal place of business in Dearborn, Michigan, which was registered with the California Secretary of State and conducted business in the State of California.

7. At all relevant times, these Defendants were employers within the meaning of ERISA § 3(5) (29 U.S.C. § 1002(5)) and the National Labor Relations Act ("NLRA") § 2(2) (29 U.S.C. § 152(2)), and at all relevant times was engaged in an industry affecting commerce within the meaning of ERISA § 3(11) and (12) (29 U.S.C. § 1002(11) and (12)).

8. South City Motors, Inc., Capital Expressway Ford Inc., Sunnyvale Ford, Inc., and Ford Motor Company, are herein jointly referred to as "Defendants" or "the Ford Group."

## JURISDICTION

9. This Court has jurisdiction over this action under ERISA §§ 4221(b)(2), 4221(b)(3), and 4301(c) (29 U.S.C. §§ 1401(b)(2), 1401(b)(3), and 1451(c)). Plaintiffs seek to enforce the Arbitration Award pursuant to ERISA § 4221(b)(2) (29 U.S.C. § 1401(b)(2)), and seek all other appropriate legal or equitable relief under ERISA.

## VENUE

10. Venue is proper in the Northern District of California pursuant to ERISA § 4301(d) (29 U.S.C. § 1451(d) because the Plan is administered in Alameda, California, within the Northern

3
COMPLAINT TO CONFIRM AND ENFORCE ABITRATION AWARD

District of California.

**INTRADISTRICT ASSIGNMENT**

11. Assignment to the San Francisco/Oakland Division is appropriate pursuant to Civil Local Rule 3-2(d) because a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred in Alameda County, California, where the plan is administered.

**FACTUAL ALLEGATIONS**

I. <u>**Background and History of Withdrawal Assessments**</u>

12. Ford Motor Company owned a group of seven car dealers who contributed to the Plan under collective bargaining agreements with the Machinists Union. The Ford Group was a participating employer in the Trust and had an obligation to contribute to the Plan until such time that all members of the group had withdrawn from the Plan. The members of the Ford Group withdrew from the Plan at various times from 2002 through 2010. As a result of the Ford Group's withdrawal from the Plan, members of the Ford Group were assessed withdrawal liability.

      A.      **The First South City Motors Assessment**

13. In November 2009, the Plan assessed withdrawal liability against South City Motors. This assessment was based on the combined contribution history of South City Motors and its predecessor, South City Ford, dating back at least ten years before the 2009 withdrawal. At the time of this initial assessment, it appeared that South City Motors had been a contributing employer for far longer than five years.

14. In December 2009, South City Motors requested review on the basis that there was a "free look" provision in its collective bargaining agreement. South City Motors argued that, under the "free look" provision of ERISA § 4210 (29 U.S.C. § 1390), it could not have withdrawal liability because it contributed to the Plan for less than five years.

15. ERISA § 4210 (29 U.S.C. § 1390) allows a plan to adopt a provision for a temporary contribution obligation, to the effect that an employer will not have withdrawal liability if it had an obligation to contribute to the plan for no more than the lesser of (a) 6 consecutive plan years preceding the date of withdrawal, or (b) the number of years required for vesting under the plan.

16. The Plan was amended to adopt the free look provision. The Amendment provided that nothing in the Trust Agreement was intended to relieve an employer of any obligation for withdrawal liability under Title IV of ERISA, but that a five year free look is available if, among other things, the employer first had an obligation to contribute to the Plan after August 1, 2004, and had an obligation to contribute to the Plan for no more than five consecutive plan years preceding the date of withdrawal.

### B. The Ford Group

17. In investigating South City Motors' request for review of the 2009 assessment, the Plan requested information from South City Motors to determine whether it was under common control with any other employers that contributed to the Plan. In the course of the review process, the Plan learned that Ford Motor Company owned 80% or more of the voting stock of South City Motors as well as a group of other employers that had contributed to the Plan for a period of more than five years. The Ford Group consisted of Peninsula Ford of Burlingame, McHugh Lincoln Mercury of Los Gatos, Sunnyvale Lincoln Mercury Sales, Inc., Antioch Ford, South City Motors a.k.a. S & C Ford or San Francisco Ford, Capitol Expressway Ford, and Sunnyvale Ford a.k.a. Peninsula Ford of Sunnyvale. Each of these Ford Group members withdrew from the Plan at different times between 2002 and 2010.

### C. Revised Assessment of the Ford Group

18. On May 20, 2011, the Ford Group supplemented the request for review with an argument that the "free look" provision applied to each individual member of the Ford Group and not the group as a whole. After consideration of the request for review, as supplemented, and an analysis of the contribution history of the group, a revised assessment was issued on July 6, 2011. The Plan rejected the Ford Group's challenge to the assessment based on the "free look" because the free look provision applies to the controlled group as a whole, not separately to the individual members of the group. Thus, withdrawal liability was assessed against the entire Ford Group. The revised assessment included two separate withdrawal liabilities, a 2009 partial withdrawal liability of $2,883,457 and a 2010 complete withdrawal liability of $617,045. The Plan gave the Ford Group credit for principal withdrawal liability payments previously made by members of the

group and reduced the quarterly payments proportionally to reflect the credits.

19. On January 31, 2012, the Ford Group requested review of the July 2011 revised assessment. In the process of responding to requests for information from the Ford Group, the Plan determined that it had made an error in its calculation of the 2010 complete withdrawal liability. Therefore, on March 30, 2012, a revised assessment was issued to the Ford Group which contained various credits and reductions in the withdrawal liability payments.

20. On June 26, 2012, the Ford Group again requested review of the March 30, 2012 revised assessment. On October 19, 2012, the Plan responded to the request for review rejecting the Ford Group's challenges to the assessment of the withdrawal liability.

II. **Procedural History of Arbitration Proceeding and District Court Case**

21. Under ERISA § 4221(a) (29 U.S.C. § 1401(a)), any dispute concerning a determination of withdrawal liability must be resolved through arbitration.

22. On December 12, 2012, the Ford Group initiated arbitration to challenge the revised March 30, 2012 assessment, which assessed the Ford Group with a 2009 partial withdrawal liability of $2,883,457.00 and a 2010 complete withdrawal liability of $97,416.00, less credit for previous withdrawal liability payments. The Ford Group argued that the "free look" provision exempted them from liability. The Ford Group made the contentions that they believed the Plan's "free look" provision applied on a non-controlled group basis and only agreed to contribute to the Plan on that basis. They argued that if the "free look" rule were to apply on a controlled group basis, then the contribution was void due to mutual mistake of fact.

23. The arbitration proceeding, *South City Motors, et al. and Automotive Industries Pension Trust Fund*, American Arbitration Association Case No. 74 621 01824 12 DECR, was conducted by Arbitrator Thomas F. Levak under the American Arbitration Association's Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes ("MEPPA Rules").

24. Multiple issues were presented to the Arbitrator for resolution. On July 18, 2014, the arbitrator ruled that certain issues were not arbitrable, specifically estoppel, mistake, and other equitable defenses to withdrawal liability, and denied the Ford Group's discovery requests for

1  information relating to these issues.

2     25.    On March 6, 2015, the Defendants filed an action in the United States District Court, Northern District of California, entitled *South City Motors, et. al. v. Automotive Industries Pension Trust Fund, et. al.,* Case No. 15-cv-01068-JST, making claims for fraudulent concealment, negligent concealment, and equitable estoppel, and seeking both restitution and declaratory relief. In their complaint, the Ford Group alleged that the Plan fraudulently and negligently misrepresented that the "free look" provision would apply to them on a "non-controlled group basis."

     26.    As a result of the Ford Group's filing the District Court Action, Arbitrator Levak determined that the Arbitration proceeding would be held in abeyance until the District Court make a ruling regarding that action.

     27.    On May 12, 2015, the Plan filed a motion to dismiss the claims in the District Court Action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9. In the alternative, the Plan requested that the District Court stay the matter pending the arbitration, noting that the arbitrator should first decide whether the "free look" provision applies on a controlled group basis.

     28.    On August 4, 2015, the District Court granted the Plan's Motion to Dismiss the claims alleging fraudulent inducement/concealment, negligent representation/concealment, equitable estoppel, and declaratory relief. The Plan's motion was denied as to the Ford Group's claim for return of contributions paid by a mistake of fact or law pursuant to ERISA § 403(c)(2)(A) (29 U.S.C. § 1103(c)(2)(A)). In addition, the District Court granted the Plan's motion to stay the District Court Action pending resolution of the arbitration proceeding.

     29.    The arbitration proceeding before Arbitrator Levak was resumed after the District Court Action was stayed. The primary issue decided by the arbitrator was whether the temporary contribution provision of ERISA § 4210 (29 U.S.C. § 1390) (the so-called "free look" provision) applied to the Ford Group as a whole or to each member of the group individually. Ultimately, the arbitrator determined that the Trust Fund properly applied the "free look" provision to the Ford Group as a whole, therefore, there was be no reduction in the Ford Group's liability, regardless of whether some of its members contributed to the Plan for less than five years.

30. On July 8, 2017, Arbitrator Levak issued an Award in favor of the Plan. A copy of the Award is attached hereto as *Exhibit A.* The Award reads as follows:

1. Claimants' claim is denied;
2. Respondent's counterclaim is granted;
3. Claimants are required to continue making quarterly installment payments of $64,683.00 on the last day of each calendar quarter from June 30, 2017 through June 30, 2024, with a final payment of $5,350.00 on September 30, 2024;
4. Attorneys fees in the amount of $109,262.75 and costs in the amount of $9,452.73 are immediately due and payable by Claimants to Respondent.

31. The Arbitrator also incorporated by reference into the Award, his earlier opinions and orders, including the following: (a) the February 24, 2017 Order of Summary Judgment in Favor of Respondent (the Plan), attached hereto as *Exhibit B*; and the May 22, 2017 Supplemental Order of Summary Judgment in Favor of Respondent, attached hereto as *Exhibit C*.

32. Defendants have refused to pay attorney fees and costs awarded, thus necessitating this present action to enforce the Award.

## FIRST CAUSE OF ACTION

### (Enforcement of Arbitration Award – ERISA § 1401(b)(2))

33. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 32, above.

34. The July 8, 2017 Arbitration Award, awarded the Plan continuing installment payments of withdrawal liability as well as payment of the Plan's attorneys fees in the amount of $109,262.75 and costs in the amount of $9,452.73. The attorney's fees and costs were "immediately due and payable" to the Plan.

35. Defendants have refused to pay the attorney's fees and costs required by the Award. Counsel for Defendants has communicated to Plaintiffs' counsel that the Defendants do not intend to pay these amounts.

36. ERISA § 4221(b)(2) (29 U.S.C. 1401(b)(2)) provides as follows:

Upon completion of the arbitration proceeding in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States District court in accordance with section 4301 [29 USC 1451] to enforce, vacate, or modify the arbitrator's award.

37. ERISA § 4221(b)(2) (29 U.S.C. 1401(b)(2)) references ERISA § 4301 (29 U.S.C. § 1451) which at Section (e) provides: "In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party."

38. The Trust, as the prevailing party, was awarded $109,262.75 in attorney's fees and costs in the amount of $9,452.73 pursuant to ERISA § 4301(e) (29 U.S.C. § 1451(e)), which Defendants have failed to pay.

39. Since Defendants failed to comply with the Award, Plaintiffs have been forced to bring this action to enforce it. In accordance with ERISA § 4221(b)(2) (29 U.S.C. 1401(b)(2)), Plaintiffs are entitled to an order requiring Defendants to immediately pay the amounts owed.

40. Pursuant to ERISA § 4301(e) (29 U.S.C. § 1451(e)), Plaintiffs are also entitled to additional attorneys' fees and costs for bringing this action to enforce the Award. Plaintiffs are entitled to an award of additional attorneys' fees in an amount to be determined, for their efforts to collect the amounts due the Plan under the Arbitration Award.

41. Defendants' failure to comply with the Award has caused the Plan to suffer immediate, continuing, and irreparable injury, and Plaintiffs are without an adequate remedy at law. Based on the foregoing, Plaintiffs respectfully request a Judgment as set forth below, including an order requiring Defendants to immediately pay the total sum of $118,715.48. Any further delay in payment will be detrimental to the Plan.

## PRAYER

**WHEREFORE,** Plaintiffs request a Judgment for the following relief:

42. An order confirming both the Arbitration Award of Arbitrator Levak (Exhibit A), including the legal determinations and findings of fact referenced and incorporated in Arbitrator Levak's Award (Orders on Summary Judgment in Favor of Respondent - Exhibit B, and Supplemental Order of Summary Judgment in Favor of Respondent - Exhibit C), all in accordance with ERISA §§ 4221(b)(2) and 4221(b)(3) (29 U.S.C. §§ 1401(b)(2) and 1401(b)(3)).

43. An order directing entry of judgment in favor of Plaintiffs and ordering Defendants to continue making quarterly installment payments of $64,683.00 on the last day of each calendar

1 | quarter from June 30, 2017 through June 30, 2024, with a final payment of $5,350.00 on
2 | September 30, 2024, until the full amount is repaid in accordance with 29 C.F.R. § 4219.31(d).

3 |      44.    An order directing entry of judgment in favor of Plaintiffs and ordering Defendants
4 | to pay attorneys fees in the amount of $109,262.75, and costs in the amount of $9,452.73, pursuant
5 | to the Award, plus accruing interest.

6 |      45.    An order directing Defendant to pay Plaintiffs' costs and expenses, including
7 | reasonable attorney's fees and costs incurred by Plaintiffs in connection with this action as
8 | permitted by ERISA § 4301(e) (29 U.S.C. § 1451(e)).

9 |      46.    Such other relief as this Court deems appropriate.

Dated: August 7, 2017               SALTZMAN & JOHNSON LAW CORPORATION

By: /s/ Carol A. Treasure
     Carol A. Treasure
     Attorneys for Plaintiffs